## COURT OF APPEALS.

THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, appellants agt. DANIEL BUHLER, respondent.

Under the acts of the legislature passed for the more effectual prevention of fires in the city of New York, no wooden or frame building within the fire limits can be raised, enlarged or built upon, except only that *brick front frame dwelling houses and wooden dwelling houses may be raised,* under a penalty of $500.

In permitting the raising of dwelling houses, the acts intended that such buildings only as were used and occupied as *dwelling houses at the time the raising took place,* and such as were in good faith to be so used and occupied, should come within the exceptions mentioned in the acts. Buildings originally erected for dwelling houses, but which have for years ceased to be used and occupied for such a purpose, do not come within such exceptions, and are not allowed to be raised.

This penalty of $500 applies to every violator of the acts, whether he be the owner of the land in fee or be the lessee thereof, or has a qualified or contingent interest therein by virtue of some agreement or contract in writing, or in any other manner.

*March Term,* 1867.

APPEAL from a judgment at general term, in the first district, reversing a judgment for plaintiffs at special term.

AUG. F. SMITH, *for the appellants.*
SAMUEL HAND, *for the respondent.*

DAVIES, Ch. J.   This is an action to recover certain penalties claimed to have been incurred by the defendant for a violation of the fire laws relating to the city of New York. The sections of the statute material to the questions presented for consideration are as follows:

Laws of 1849, chapter 84, section 20, reads: "No wooden or frame building whatever, whether the same may have a brick front or otherwise, within the fire limits as extended as aforesaid, or as the same may be hereafter extended, shall be raised, enlarged or built upon, or removed from one lot to another, within the fire limits of the said city, as the same are extended as aforesaid, or may hereafter be extended; *provided, however, that brick front frame dwelling houses and wooden dwelling houses only may be raised under*

*the circumstances and in the manner specially provided for in the fourteenth section of this act."*

The fourteenth section, referred to in the twentieth section, was as follows:

"§ 14. If any brick front, frame or wooden dwelling house, already erected within the fire limits, as the same are extended by this act or may hereafter be extended, shall require new roofing, it shall and may be lawful for the proprietor or proprietors thereof to raise the same, for the purpose of making a flat roof thereon; provided that such new roof shall be made of copper, slate, tin, zinc or iron; and also provided that such dwelling house, when so raised, shall not exceed thirty-five feet in height from the level of the sidewalk to the peak or highest part thereof."

Section 24, as amended by chapter 66 of the laws of 1851, was, so much of it as is material to this case, as follows:

"§ 24. The owner or owners of any dwelling house, store, storehouse or other building, or of any frame building with or without a brick front, or of any wooden building, or of any ash house, ash hole or wooden shed, *whether he or they be the owner or owners of the land in fee, or be the lessee or lessees thereof, or has or have a qualified or contingent interest therein by virtue of some agreement or contract in writing, or in any other manner,* who shall violate any provision of this act, and every builder, carpenter, mason, roofer or other person, who may be employed or assist therein, shall, for every such violation respectively, forfeit and pay the sum of five hundred dollars; and such owner or owners shall forfeit and pay, in addition thereto, the sum of fifty dollars for every twenty-four hours such violation shall remain after notice to remove the same shall have been given. Such notice may be signed by any of the trustees or the fire wardens of the fire department of the city of New York."

The words in italics in section 24 are an amendment to the law of 1849.

The violation complained of was the raising of the roof of the building No. 464 Pearl street, corner of Chatham street, being a brick front frame building.

The alterations were made by the defendant in April, 1853.

The defendant was the lessee of the whole premises, and occupied them at the time of the alterations, having hired from David Rockwell & Co., from February 1 to May 1, 1853.

The building was originally a dwelling house, and occupied as such. It had, however, ceased to be a dwelling house fifteen to twenty years before, had then been converted into a store, and was ever afterward used for that purpose. The defendant occupied it as a furniture store from February to May, 1853, during which time the alterations were made ; and after May it was still occupied for the same purpose. David Rockwell & Co. preceded the defendant, and occupied the premises as a cloth store for six years or more. Wilson G. Hunt preceded David Rockwell & Co., and also occupied the premises as a cloth store, but for how many years does not appear. Thomas Hunt & Co. preceded Wilson G. Hunt, and occupied the premises for the same purpose for nine years.

Before David Rockwell & Co. had the store, one of the Hunts had extended the store in the second story over the adjoining premises, Nos. 121, 121½ and 123 Chatham street, which were originally independent buildings, and this extension continued down to and after the alterations ; and the premises were so leased to Buhler's landlord, Joseph Naylor, in February, 1853, for three years, and also to Buhler himself for the same time.

The lease to Naylor, dated February 7, 1853, for three years, reads : "*All that certain house and lot known as number 464 Pearl street, corner of Chatham street, in the city of New York, the second floor of which house extends over the stores numbers 121, 121½ and 123 Chatham street, being the premises lately occupied by David Rockwell & Co.*"

The lease from Naylor to defendant was also of the store as extended over 121, 121½ and 123 Chatham street, and for three years.

When David Rockwell & Co. occupied, they let a room

on Pearl street as a carpet upholstery; they occupied all the rest.

After May 1, 1853, and after the alterations, the basement was occupied as a restaurant, and so much of the first floor as was not occupied by Buhler was a liquor store.

John Henry says that a man slept in the eating house, but this was after the alterations; and James Junk says: "I don't know whether anybody slept there; I think a daguerreotype man slept in a portion of the building which he occupied."

There was nothing to show that this was before the alterations, but rather that it was after, as David Rockwell & Co. occupied the whole premises except what they let to the carpet upholsterer.

The covenants in the lease also show how entirely the building had ceased to be a dwelling house. The lessee covenants that "the premisess shall not be used or ccupied for any *business* or purpose illegal," &c., and "if said premises shall be used or occupied for any *business* extra hazardous," &c.

The rent was $3,200 per annum, besides Croton water tax and all the repairs and alterations, a sum four times what a dwelling house in that locality could command.

While David Rockwell & Co. occupied the premises, their clerks, or some of them, who were single men, slept in three rooms which were in the attic, and took their meals at boarding houses. These rooms were taken away when the alterations in question were made.

There was some difference of opinion between Titus and Watkins, two of the trustees of the fire department, as to whether this was a dwelling house, and some discussion with the defendant on the subject in June, after the alterations.

Gregg, the fire warden, says that he saw the alterations, and "did not tell the defendant to stop, because I thought it was a dwelling house." (*See also Buhler's testimony on the same subject.*)

At the trial, there being no conflict of evidence, the judge directed a verdict for the plaintiffs for five hundred dollars,

but not for the continuing penalties, which depend upon the service of notice. The $500 is given by section 24, without reference to any notice. (*See the section above.*)

The general term reversed the judgment, upon the ground that the building in question was a dwelling house when the alterations were made, and ordered a new trial. The plaintiffs now appeal to this court, and assent that, if the order be affirmed, judgment absolute shall be rendered against them herein.

As the verdict was only for the penalty of five hundred dollars mentioned in the 24th section, any inquiry in reference to the other penalties therein mentioned, or as to the notice referred to, is of no moment.

The only question presented for decision is, whether the building in question was a dwelling house within the meaning and intent of the act. The act under consideration was passed for the more effectual prevention of fires in the city of New York, and, being a beneficial statute, is to be liberally construed to attain the object intended.

The provisions of the 20th section are stringent and authoritative, that no wooden or frame building within the fire limits should be raised, enlarged or built upon. This prohibition is clear, explicit, and applies *to all* wooden or frame buildings.

A proviso was added, however, that only brick front frame dwelling houses and wooden dwelling houses might thereafter be raised. The defendant contends that he comes within the exception named in this proviso. *Prima facie,* having raised a wooden or frame building within the fire limits, he has subjected himself to the prescribed penalty. The onus is therefore upon him to show that the building in question was a dwelling house at the time of the raising. The law contemplated a permission only to raise buildings used and occupied as dwelling houses. Every person having any experience in regard to the danger of fires in a large city, well knows that this class of buildings are least exposed to danger from fire, and for the obvious reason that it is occupied at all hours of the day and night, and persons are

always on hand to extinguish a fire, if one takes, and to use all needful precautions against one. Again, a dwelling house is less exposed to the attempts of incendiarism, as the inducements to that crime are not so great in respect to this class of buildings, and the crime, if attempted, more certain of detection.

It is manifest that the legislature, in passing this act, had these well known facts in mind; and in permitting the raising of dwelling houses within the fire limits, they intended what the language used plainly imports, such buildings only as were used and occupied as dwelling houses at the time the raising took place, and such as were, in good faith, to be so used and occupied. The circumstance that Gregg, one of the fire wardens, did not tell the defendant to stop, because he thought it was a dwelling house, was of no moment, and cannot be set up by defendant as an authorization for him to violate the law. (DENIO, *Ch. J.*, *Fire Department* agt. *Buffum, MS. opinion in this court.*) It was well said, in that case, that the defendant could only, with safety, take the law for his guide; and it was there held, that the opinion of one of the officers of the fire department, upon the question whether the erection in controversy in that case was a violation of law, was clearly incompetent to be shown. A dwelling house is a building inhabited by man (1 *Bouv.* 455), otherwise a mansion, which is synonymous with the French word *maison*, the abode or residence of a family. It cannot be doubted that the designation of dwelling house, as used in the act, was meant to be employed in its most popular or general sense; and it never could have been intended by the legislature to have included within the proviso buildings originally erected for dwelling houses, but which had for years ceased to be used and occupied for such a purpose. When a building, originally erected and used as a dwelling house, ceased to be used as such, it fell within the prohibition of the first clause of the 20th section, and could not be raised, under the permission given in the proviso to that section. The defendant's interest in the premises were such as undeniably to subject him to the penalty

claimed under the provisions of section 24, as amended in 1851.

Being clearly of the opinion that the building in question was not a dwelling house within the meaning of the proviso to section 20 of the act, the defendant subjected himself to the penalty of five hundred dollars ; and the direction of the judge to the jury to find a verdict accordingly was correct.

The order for a new trial should be reversed, and judgment on the verdict affirmed, with costs.