CASE 20.—PROSECUTION AGAINST WALLACE WOOLFOLK
    FOR FELONIOUSLY BREAKING AND ENTERING A
    DWELLING HOUSE.—October 6.

## Commonwealth v. Woolfolk.

Appeal from Hopkins Circuit Court.          ` ` ` ˥

J. F. GORDON, Circuit Judge.

From an acquittal by a jury under peremptory in-
structions the Commonwealth appeals.   Reversed.

Burglary—Dwelling House—What Constitutes—A building was
    erected for a dwelling house, and was occupied by a tenant
    for some time, who removed therefrom. At the time of
    the removal the tenant's son left in the house his wearing
    apparel and other articles, and continued to claim the house
    as his place of residence. The tenant retained the keys.
    Held—That the building, the day after the tenant's removal,
    was a dwelling house, within Ky. Stats. 1903, sec. 1162, pro-
    viding that, if any person shall "feloniously break into any
    dwelling house" and take anything of value, he shall be pun-
    ished.

N. B. HAYS, Attorney General, and C. H. MORRIS for appellant.

We submit that where a tenant of a dwelling house left it
temporarily, leaving his trunk therein, with the intention of
returning in a few days, it was a dwelling house in the meaning
of the law, and any one breaking into such house with intent
to steal therefrom is guilty under Ky. Stats., sec. 1162.

OPINION BY JUDGE SETTLE—Reversing.

The appellee, Wallace Woofolk, and one Otho
Armstrong were jointly indicted in the Hopkins
Circuit Court for feloniously breaking and entering
a dwelling house and taking therefrom property of
value belonging to another. A separate trial was al-

lowed appellee, which resulted in his acquittal by the jury under a peremptory instruction from the trial judge requiring them to so find. Counsel for the Commonwealth excepted to the giving of the peremptory instruction by the lower court, and prosecutes an appeal to obtain the decision of this court upon the question of whether or not such instruction was proper.

It does not appear from the record upon what ground the peremptory instruction was given. It is, however, surmised by counsel for the Commonwealth that it was done because the house which appellee and his associates are charged to have broken into and entered was, at the time, unoccupied. It appears from the evidence that the house in question is situated in the city of Madisonville, and that it is owned by Mrs. Hulda Mitchell; that it is a dwelling house, was built for use as such, and has never been used for any other purpose; that R. J. Oates and his family occupied it as a dwelling house and place of residence during the months of October and November, 1904, and removed from it to another house December 1, 1904. However, his son, Omer Oates, at the time of the removal of his father from the Mitchell house, left therein his trunk, containing his clothing and certain other articles of value, and continued to claim the house as his place of residence for some days, in order that he might not be deprived of the right to vote in a primary election which was held shortly thereafter. The trunk was locked when left in the house, as was the door of the room in which it was placed and all doors through which the house could be entered from the outside and surrounding premises. The keys, after the locking of the doors, were retained by R. J. Oates, and were in his possession

when the house was broken into. On the day after his father's removal from the Mitchell house, Omer Oates received information that it had been broken into. He immediately went to the house upon an investigation, and at once discovered that an outer door had been unlocked, and also the door of the room containing his trunk; that the trunk had been opened by breaking the lock, and several articles of value, including a ring and watch charm, taken therefrom. The arrest of appellee and Armstrong occurred on the following day; they being charged with the crime because, as testified by Mrs. Alex Pritchett, whose house was near by, they were seen to enter the side door of the Mitchell house the day after the removal therefrom of the Oates family. Down to the time of their entering the house the door had remained closed. Mrs. Pritchett and her husband also testified that, on the night of the same day the house was entered by appellee and Armstrong, they saw them go to the "Tabernacle" on an adjacent lot and take something from under the steps of that building; but they were unable to distinguish the articles. Alex Prichett also testified to the fact that the doors of the Mitchell house were closed when and after the Oates family left it, and that the door through which appellee and Armstrong were seen by his wife to enter the house was shortly thereafter found by him ajar, or partly open.

Sec. 1162, Ky. Stats. 1903, under which the indictment in this case was found, is as follows: "If any person shall feloniously take out of or from any church, chapel or meeting house, school house, court house or other public building, any goods or chattels, or other thing of value, belonging thereto, or shall rob any person in his dwelling house or place, or in any booth or tent in a fair or market,

he, his wife, children or servants or other person then being within; or shall feloniously break any dwelling, part thereof, or any out house belonging to or used with any dwelling house, and feloniously take away anything of value, although the owner or person may not be there, he shall be confined in the penitentiary not less than two nor more than ten years."

Was the building broken into a dwelling house in the meaning of the statute? Any one of the following definitions of a dwelling house may be accepted as legally correct: "A place of residence; habitation." "A residence, domicile or mansion." "A building for the habitation of man." "A house designed to be occupied as a place of abode." "A house occupied, or intended to be occupied, as a residence." (Cyc., 1226.) Secs. 1162, 1163 and 1164, Ky. Stats., 1903, treat of felonies that may be committed by breaking into or stealing from buildings of practically every conceivable character and class. The dwelling house is one of the many enumerated, and belongs to one class. It is distinguished from all other houses mentioned in the several sections of the statute, supra, by its name, and also by the use to which it is put or designed. The term "dwelling house" is, therefore, one of differentiation, a name which distinguishes it from every other house or class. To constitute a building a dwelling house, it is not necessary that it be constantly occupied as a place of residence by a family or person. If constructed for use as a place of residence of a family or person, it is a dwelling house, even in the process of erection, and is known as and called a "dwelling house." The same is true of a dwelling house that becomes for a time vacant, after being occupied by a family or person as a place of resi-

dence. Having been designed for and used as a dwelling house, it remains a dwelling house, though temporarily unoccupied, until converted to some other use.

The several sections of the statute, supra, were designed to enlarge the powers of the courts in bringing to punishment all housebreakers, no matter what the character of the house, or whether the crime be committed in the daytime or at night, whereas at the common law this class of. offenders could be convicted only of larceny or burglary; the latter crime being "the breaking and entering the dwelling house of another in the night time with the intent to commit a felony therein, whether the felony be actually committed or not." (Bouvier's Law Dictionary, 227.)

In this State burglary is still a crime, and punishable as such according to the provisions of the common law; but the sections of the statute against housebreaking abrogate in large measure the technical rules of the common law, which punished housebreaking only when committed at night and by breaking and entering a dwelling house or church. Therefore, under sec. 1162, Ky. Stats. 1903, it is made a crime for one, in the daytime or at night, to break and enter a dwelling house and feloniously take therefrom property of value, although such house may be temporarily vacant at the time, or, if occupied, "the owner or person may not be there." As before stated in commenting upon the evidence, the house which appellee broke and entered was erected for and designed as a dwelling house and has never been converted to any other use. It can not be said to belong to any other class of houses or buildings mentioned in the statute in connection with the crime of housebreaking. It was actually occupied

by the Oates family as a place of residence down to within a day of the time it was forcibly broken and entered. Indeed, the elder Oates had not surrendered the keys to the owner, and his son, whether an actual occupant of the house at the time of the commission of the crime or not, had never intentionally vacated it, but had left his trunk and personal effects in a room thereof for the purpose of retaining it as a place of abode until after the holding of the primary election.

As, in our opinion, the house in question was, at the time of the commission of the crime with which appellee is charged, a dwelling house in the meaning of the statute, and there was some evidence conducing to establish his guilt, the court erred in giving the peremptory instruction. Wherefore these conclusions are certified to the circuit court as the law of the case.