# Mayor and Aldermen of Birmingham v. Birmingham Water Works Co.

*Bill to Enjoin the Water Works Company From Charging and Collecting More Than the Schedule Rate for Water.*

(Decided July 2, 1907. 44 South. 581.)

1. *Waters; Municipal Supply; Contract Rates; Dwelling House.*—Where the franchise contract of the water company provided specific rates to be charged for water furnished for domestic use for dwelling houses, graduated according to the number of rooms, except that the rates for bath tubs, etc., for use by a private family and its servants was arbitrarily fixed, houses used for taking boarders were dwelling houses and entitled to the contract rate for dwellings; a boarding house being a dwelling house as distinguished from a hotel or inn.

2. *Words and Phrases; Public Boarding House.*—The use of the term, public, as applied to boarding houses does not render them other than boarding houses, nor exclude them from the class of buildings known as dwellings; the term, boarding house, qualifying the term, public, as well as the term, public, qualifying that of boarding house.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by the mayor and aldermen of the city of Birmingham against the Birmingham Waterworks Company for breach of the defendant's contract to supply water for dwellings at specified prices, in that defendant had installed meters and charged for meter service to dwellings of consumers who kept boarders, and that such meter rates were in excess of the schedule rate for dwellings, closets, and bath tubs prescribed by the contract. Defendant answered, alleging that the houses in question were originally built for private residences, but at the time the meters were installed were being used as commercial boarding houses or small hotels, and were

not dwellings within the meaning of the contract. The plea was afterwards amended by substituting the words "public boarding houses," and by striking from the plea the words "or small hotels." From a judgment in favor of defendant, plaintiffs appeal. Reversed and rendered.

See 42 South. 10.

E. D. SMITH, for appellant.—The house in question was within the terms of the contract as to the charges to be made for dwellings.—*Bir. W. W. Co. v. Truss,* 105 Ala. 530. The use of the word, public, as applied to boarding house does not change the character of the place since the very idea of a boarding house is that there must be a contract with the keeper of the house entitling one to live therein, and so distinguishing it from a hotel or inn.—*Williard v. Rhinehart,* 2 E. D. Smith, (N. Y.) ; *Commonwealth v. Cuncannon,* 3 Brewst. (Pa.) A house does not lose its character as a dwelling because it becomes a boarding house.—*State v. Leedy,* 95 Mo. 76 ; *In re Veeder,* 65 N. Y. Sup. 517 ; *Rafferty v. New Brunswick F. Ins. Co.,* 38 Am. Dec. 525 ; *Bir. W. W. Co. v. Truss, supra.*

LONDON & LONDON, for appellee.—A public boarding house is not a dwelling.—*N. Y. F. Dept: v. Buhler,* 35 N. Y. 177 ; *Skillman v. Smuthehurst,* 40 Atl. 855 ; *Davis v. The State,* 38 Ohio St. 505 ; *Garnett v. Albre,* 103 Mass. 372.

McCLELLAN, J.—The amended plea was questioned for sufficiency, was sustained, and this appeal results. The sole question, controlling the conclusion of sufficiency or insufficiency of the amended plea, is: Is a public boarding house not a dwelling, within the meaning of

the existing contract between appellant and appellee? This contract, relative to charges to be exacted, divides the patrons of the appellee into three classes, viz. : The user of hydrants for fire protection, etc.—the city; those consuming water for domestic purposes; and all those consumers without the two classes created. Practically the domestic consumer is an exception from the last mentioned class; and, of course, if not of the domestic class, is subject to be charged for the consumed water as measured by meter. The schedule for domestic use is based on the dwelling, graduated according to the number of rooms, except that the rate for bath tubs and closets, for the use of a private family and its servants, is arbitrarily fixed in the contract. As in the construction or interpretation of contracts, seeking always to ascertain the intention of the parties thereto, the decision of the question whether in a given case a building is a dwelling or not, within the meaning of the contract, the situation and surroundings or the parties and the end sought to be attained by their agreement have exercised, as appears from the cases, a large influence in inducing the conclusion reached. In another class of cases, to which our attention has been invited, prosecutions for larceny and burglary from and of dwellings, brought the matter for the court's determination with reference to enforcement of penal statutes. So, with the possible exception of the *Truss Case*, 135 Ala. 530, 33 South. 657, to be later mentioned, we know of no authority in point, though other cases available are presently valuable in the announcement of relatively applicable principles.

Construing this contract, it is evident that the flat rate scheduled for domestic use is based upon the dwelling as an abode, and not its character in construction. In other

words, whether the buildings were constructed as dwellings or not, the test, under this contract is: Were these buildings abodes of inhabitants of the city of Birmingham? Clearly, if a building, not originally a dwelling, nor built in that form or for that purpose, afterwards becomes an abode, is used for that purpose, the consumer therein is entitled to the flat rate for water used for domestic purposes, according to the contract; and, on the other hand, a building built and occupied as an abode, may lose its character as such, and thus pass without the class granted the flat rate. So it may be affirmed that, as here important, the character of the occupation of the building, and not the purpose in its erection, govern the question whether the building is a dwelling or not.—*Fire Department v. Buhler,* 35 N. Y. 177; *Davis v. State,* 38 Ohio St. 505; *Foster's Case,* 84 Ala. 451, 4 South. 833. In the *Truss Case, supra,* through Sharpe, J., this court said: "The evidence shows that the house in question is defendant's dwelling, and the fact that six or seven boarders live in the house and a few others take meals there does not destroy its character as a dwelling. This, however, seems from the agreement of facts to be conceded." In the case of *Commonwealth v. Cuncannon,* 3 Brew. (Pa.) 344, discussing the effect of taking boarders, it is said: "Shall we say that the house is not private because the head of the family boards his son? And, if taking a relative to board does not change the character of a private house, is it affected by receiving a stranger as a lodger? It will hardly be contended that it is any the less a private house because it contains one such person; and the moment that is admitted there is an end of the difficulty, for we cannot draw a line and say one, two, or six persons may lodge in a house, and it still be private, but that the moment it receives seven it becomes

a public house.   *   *   *   The public house is for the entertainment of all who come lawfully and pay regularly. The boarding house is for the accommodation only of those who are accepted as guests by the proprietor. Such an establishment is as much a private house as if there were no boarders." To the same effect, we think, is the holding of the New York court to be found in *Willard v. Reinhardt*, 2 E. D. Smith, 148. We are of the opinion that the *Truss Case, supra*, declares, though tersely, the same conclusion, viz., that the taking of boarders or lodgers does not change the use of the building, which, we have said, is determinative of its character. Appellee insists, as we understand counsel, that the announcement was induced by the agreement of facts. Our view is contrary. But, even if appellee is correct, the statement is sound in reason and sustained by authority; and we so hold.

The remaining possible factor, bearing upon the question presented by the amended plea, to be considered, is whether the association of the word "public" with the term "boarding house" serves to remove that kind of house from the class which, in our opinion, is readily compatible with such a house being a dwelling under this contract? In our opinion, and we so hold, the maxim "Noscitur a sociis" (2 Lewis' Sutherland on Construction, § 414 et seq.) is applicable to the descriptive expression "public boarding house," and that the coupling therewith of the word "public" has no effect to expand the signification present, in the term "boarding house," so as to make it nominative of a class of buildings not used as dwellings. "The distinction between a boarding house and an inn," it is said in *Willard v. Reinhardt, supra*, "is this: In a boarding house the guest is under an express contract, at a certain rate, for a certain

period of time; but in an inn there is no express engagement. The guest, being on his way, is entertained from day to day, according to his business, upon an implied contract, * * * which was the case here." This quotation sets down as clearly and accurately the distinctive feature of a boarding house as can be given, and is equally as well considered in the distinction drawn between that institution and an inn, and, we may add, a hotel or tavern; the latter a now practically obsolete term. So that, in the adoption by the pleader of the term "boarding house," he adjusts the averment to the meaning thereof, which is that the guest is there by express contract, for a stated period, and at a stated price, which implies, of course, acceptance of him as such by the host. To prefix to this condition the significance usually attached to the word "public" does not qualify the meaning of the term "boarding house," since still the express contract mentioned must be present, though manifestly the prefixed word "public" indicates a wider clientele than would be invited by the simpler term "boarding house." But it is decidedly as apparent that the word "public" is modified in comprehensiveness by the term it qualifies, to the extent, at least, that the guest must contract with the proprietor and secure his acceptance as a boarder or lodger.

And demonstration of the correctness of the conclusion stated is found, we think, in the further fact that the plea does not aver that the metered buildings are used as hotels, inns, or taverns, but simply as public boarding houses. Reading the amended plea in the light of these considerations, it does not aver that the houses in question are not dwellings within the meaning of the contract; the succeeding general denial being, as there written, merely a conclusion resting upon the antecedent

averment that they (the houses) were public boarding houses. Accordingly the amended plea is insufficient, and should have been overruled; and the decree of the lower court will be reversed, and one here rendered over ruling the plea.

Reversed and rendered.

TYSON, C. J., and DOWDELL and ANDERSON, JJ., concur.