## Slaughter v. Commonwealth.

### (Decided February 7, 1913.)

### Appeal from Christian Circuit Court.

1. Criminal Law—Appeal—Indictment—Section 120, Criminal Code— Section 281, Criminal Code.—Under Section 281, Criminal Code, the failure of the trial court to set aside an indictment on the ground that it did not contain the names of the witnesses who testified before the grand jury, as provided by Section 120, Criminal Code, is not subject to exceptions and cannot be reviewed on appeal.

2. Appeal—Former Opinion—Conclusiveness.—The rule that the decision on a former appeal is the law of the case and binds not only the trial court but the Court of Appeals applies not only to civil but to criminal cases as well.

ALVAN H. CLARK, and LINTON & CLARK, for appellant.

JAMES GARNETT, Attorney General, D. O. MYATT, Assistant Attorney General, C. H. BUSH, TRIMBLE & BELL and BREATHITT & BREATHITT, for appellee.

OPINION OF THE COURT, BY WILLIAM ROGERS CLAY, COMMISSIONER.—Affirming.

On February 4, 1912, Tom Slaughter, a negro boy 19 years of age, shot and killed Lee Jenkins, a white man 48 years of age. On the first trial of the case the jury found Slaughter guilty of murder and fixed his punishment at death. From a judgment entered in conformity with the verdict he prosecuted an appeal. The judgment was reversed and the cause remanded for a new trial. Slaughter v. Commonwealth, 149 Ky., 5. On the return of the case another trial was had, and the jury again found him guilty of murder and fixed his punishment at death. From the judgment predicated on that verdict Slaughter appeals.

A reversal is asked on two grounds: (1) Error of the trial court in not setting aside the indictment because the names of the witnesses who appeared before the grand jury were not endorsed on the indictment. (2) The verdict of the jury was flagrantly against the evidence.

1. It appears that the original indictment was lost. The case was again referred to the grand jury and a new indictment returned. Of the six material witnesses for the Commonwealth who testified before the grand jury, the names of only two of them appeared on the new indictment. Counsel for appellant made a motion to set aside the indictment on this ground. The motion was overruled. In support of the contention that the trial court erred in so holding, we are cited to Section 120, Criminal Code, and to the cases of Sutton v. Commonwealth, 97 Ky., 314, and Commonwealth v. Glass, 107 Ky. 160. Section 120 of the Criminal Code provides: "When an indictment is found, the names of all the witnesses who were examined must be written at the foot of or on the indictment." In discussing this section, the court, in the case of Sutton v. Commonwealth, *supra,* said:

"It is also contended that this indictment ought to have been set aside because Section 120 was disregarded, being as follows: (Here follows section.) But while a motion to set aside on that ground, if made in time, should prevail, it certainly ought not to be sustained after defendant has pleaded."

In the case of Commonwealth v. Glass, *supra,* the court, after quoting Section 120 of the Criminal Code, said:

"This provision of the Code is certainly an important one, and when there is no attempt to comply with it, we do not doubt a quashal of the indictment ought to follow a motion to that effect if made before plea. This seems to have been decided in Sutton v. Commonwealth, 97 Ky., 314."

In the same case, however, the court qualified the rule laid down by the following language:

"But where the name of a witness has been omitted from the indictment from oversight or from the fact that he is not regarded as a material witness, it seems to us that it would be highly technical to say that the provision above quoted required the indictment to be set aside.

If such an omission occurs from the reasons we have indicated, and the names of other witnesses in the case appear on the indictment we should think there has been a substantial compliance with the statute.''

The doctrine in the above cases was also discussed in the more recent case of Porter v. Commonwealth, 145 Ky., 548. It will be observed that while recognizing the duty of the trial court to set aside an indictment where no attempt is made to comply with the provisions of Section 120, Criminal Code, the court did not hold in any of the cases referred to that a failure in this respect was an error that could be considered on appeal. On the contrary, Section 281, of the Criminal Code, as amended by the Acts of 1910, provides:

"The decisions of the court upon challenges to the panel and for cause and upon motion to set aside an indictment shall not be subject to exception.''

In the recent case of Hendrickson v. Commonwealth, 146 Ky., 742, this court, after a review of all the cases bearing on the question, announced the rule that although an indictment fails to contain an endorsement of the witnesses examined by the grand jury, and this infirmity may be corrected by motion to quash or set aside the indictment upon arraignment of prisoners, as required by Section 157, of the Criminal Code, nevertheless, under Section 281, of the Criminal Code, the decision of the court upon a motion to set aside the indictment is not subject to exception, and cannot be reviewed upon appeal.

2. The evidence shows the following facts: The deceased clerked in a store in the town of Edgoten, on the Tennessee line. Appellant, in company with three other colored boys, went to the store to get a guitar string. When they first reached the station, a train was passing. Appellant told deceased that he wanted to purchase a guitar string. The deceased replied that he would open up as soon as the train passed. When the train left, appellant went into the store, and in a short time was followed by Stark Leavell and Dude Davie. After that time Joe Qualls came in. Stark Leavell, one of the boys who was present, and who was introduced as a witness by the Commonwealth, testified that Slaughter purchased the guitar string, and after Jenkins had made the sale be asked: "Anybody else want anything?'' Witness then asked for some "goober peas,'' which Jenkins handed to

him. Then Joe Qualls came in. Witness handed some of the "goober peas" to Qualls. Jenkins again asked if anybody else wanted anything. Whereupon appellant asked for a dime's worth of cheese. Jenkins cut the cheese off and handed it to him. Appellant said: "I will be G—d—d if that is any dime's worth of cheese;" and when he said it he had his hand on his pistol in his back pocket. Jenkins told Slaughter to shut up. Thereupon Jenkins stepped from behind the counter and knocked Slaughter down on some boxes. Then Slaughter shot once, and as Jenkins fell on him he fired two more shots. Slaughter then ran out of the store, and the last that witness saw of him he was crossing the cattle gap.

Joe Qualls testified that when he went into the store Stark Leavell asked him if he wanted some peanuts. He said yes, and held out his hand. Stark put some of the peanuts in his hand. At that time he was facing the door at the back part of the house. Jenkins and Slaughter were about ten feet from him. He heard them talking, but didn't pay any attention to what they said, as he didn't think there was anything between them. He heard one shot fired, and as he ran off the porch he heard a second shot. These were all the shots that he heard.

Dr. Rollow testified that Jenkins died about 20 or 25 minutes after he reached him. He had two bullet wounds, one about five inches below the nipple, and one in the left groin. This witness makes the following statement in regard to Jenkins' dying declaration:

"He wanted a string for his guitar. He wanted me to go to the store for it, and when I went in I gave him the string and then he wanted some cheese, ten cents' worth of cheese, and I started to cut the cheese for him and he told me that it was too little, and I says 'I raised the lever twice,' and he says 'you are a damned liar,' and I hit him and he shot me."

Witness also stated that he thought deceased said Slaughter shot him three times. Other witnesses gave the dying declaration in substance as follows:

"I sold him (Slaughter) a guitar string. When he called for ten cents' worth of cheese, I cut it off for him. He said it wasn't ten cents' worth. I told him it was. He called me a damned liar, and I struck at him, and then he shot me, firing three shots at me."

After appellant left the store he was pursued by Oscar

Jenkins and later on by another party, who claims that appellant shot himself in the neck.

Appellant testified that he asked Jenkins for a dime's worth of cheese. Jenkins walked on back to the cheese knife. Appellant was on one side of the counter and Jenkins on the other. Jenkins raised the lever up once for a nickel's worth and twice for a dime's worth of cheese. Jenkins raised the lever up once and let it down. He then handed appellant the cheese. Appellant said: "Mr. Jenkins, that ain't no dime's worth of cheese." Jenkins put it back in the case and said: "That makes twice you have been here fooling with me about cheese." Jenkins then came from behind the counter and said: "What do you mean by fooling me about them cheese?" Appellant said: "I wasn't fooling with you." Jenkins said: "I am going to whale hell out of you;" and hit appellant in the mouth. While appellant was on the floor, Jenkins said: "You black s— of a b—, I am going to kill you." As Jenkins started towards him, appellant got his pistol out as quick as he could and shot him twice. Jenkins then staggered back towards the wall and appellant ran out the door. Jenkins was between him and the door at the time of the killing. He shot Jenkins because he was afraid Jenkins was going to kill him. After running out the door he was pursued by Oscar Jenkins and another man. The other man shot him in the neck. He didn't shoot himself. He lay out in the fields for some time after he was shot, and was almost frozen to death. Then some parties made a fire and tried to warm him. Next day he was lodged in jail. He never had his hand on his pistol when Jenkins assaulted him, and never attempted to get it out until after he was hit. Appellant further testified that Jenkins weighed about 180 pounds, and was much larger than appellant.

Dude Davie testified that Slaughter asked Jenkins for a dime's worth of cheese. Jenkins handed him the cheese, and Slaughter said it wasn't a dime's worth. Jenkins told Slaughter that this was the second time he had called for cheese and didn't buy it. Tom said a man didn't have to buy cheese unless he wanted to. Jenkins then said: "If you fool with me I will whale hell out of you." He then came from behind the counter and struck Slaughter with his fist, knocking him down. Slaughter was falling when the witness turned around. Witness did not hear Tom say "I will be G—d—n if that is

any dime's worth of cheese.'' Witness did not hear Tom call Mr. Jenkins a liar. As Jenkins struck Tom, witness started to go out because he thought there was going to be a rough-house. Witness did not know Tom had a pistol.

It is insisted that the foregoing facts make out a case of manslaughter only, and that the verdict of the jury is flagrantly against the evidence. The same contention was made on the former appeal. In discussing the question, the court said:

''Under this evidence it is earnestly insisted that Slaughter was only guilty of manslaughter, as the shooting was done in sudden heat and passion, and without the malice which is the necessary ingredient of the crime of murder. There is some basis for this conclusion, but as the jury was properly instructed upon the subject of murder and manslaughter, we are not prepared to say that their verdict was so excessive as to justify us in interfering with it on this ground.'' Slaughter v. Com., *supra.*

The evidence on the second trial is substantially the same as that heard on the first trial. It is well settled that a decision by this court on a former appeal is the law of the case, and is binding not only on the trial court but this court as well. This rule applies both in civil and criminal cases. Keifer v. L. & N. R. R. Co., 143 Ky., 383; Foster-Milburn & Co. v. Chinn, 137 Ky., 834; Southern Ry. Co. of Ky. v. Winchester's Adm'x., 143 Ky., 38; Arnold v. Commonwealth, 23 Ky. L. Rep., 182; Gambrel v. Commonwealth, 142 Ky., 839.

Having held upon the former appeal upon substantially the same evidence that the verdict of death was not flagrantly against the evidence, we are precluded by that opinion from again reviewing the question.

Judgment affirmed.