## Whitfield v. Commonwealth.

March 17, 1939.

CHARLES E. LESTER, JR., and STEPHENS L. BLAKELY for appellant.

HUBERT MEREDITH, Attorney General, and WILLIAM HAYES, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Affirming.

The appellant, David Whitfield, was indicted jointly with Sidney Diehm and Edward Garrison for the crime of wilful murder by setting fire to a house and burning to death a child, Mary Lou Rardin. On a plea of guilty Diehm's punishment was fixed at life imprisonment in the penitentiary. Whitfield and Garrison were tried separately, were convicted and the punishment of each was fixed at life imprisonment in the penitentiary. From that conviction Whitfield prosecuted an appeal and the judgment was reversed. As the facts appear in the opinion on the first appeal reported in 265 Ky. 640, 97 S. W. (2d) 565, it is not necessary to set them out here.

Upon his second trial he was again convicted and given a sentence of life imprisonment in the penitentiary and this is the second appeal of the case. In the opinion written on the first appeal we held there was sufficient evidence to take the case to the jury. The judgment was reversed because the trial court erred in giving an instruction that Whitfield might be convicted as an aider and abettor when the evidence showed he was not present, or near enough to aid and abet in the crime, at the time the house was burned. We held the court should have omitted the instruction on aiding and abetting and should have given one on conspiracy. This the court did on the second trial.

Four errors are assigned by appellant for the reversal of the judgment entered on the second trial. First, there was not sufficient evidence to take the case to the jury and the court should have peremptorily instructed the jury to acquit him. Second, the court erred in submitting to the jury in the first instruction whether or not Whitfield, alone, or together with Garrison and Diehm, or either of them, killed Mary Lou Rardin by maliciously burning a house in which Mary Lou Rardin was an occupant and thereby produced her death from burns. Third, that the court erred in not submitting to the jury the question of whether the killing of the child was the natural consequence of the burning of the house and therefore within the purpose of the conspiracy. Fourth, the court should have instructed on voluntary manslaughter; the contention of appellant being, if the jury found the death of the child was not

the necessary consequence of burning the house, then the appellant would be guilty only of manslaughter by reason of producing an unintended death in doing the unlawful act of conspiring to burn the house. We will take up these four questions and discuss them in the order named.

Appellant states in his brief there is a material and substantial difference between the evidence introduced on the first trial and the evidence introduced on the second trial. Therefore, the former opinion is not the law of the case, and the holding by this court therein that there was sufficient evidence to take the case to the jury is not binding on us on this appeal. But at no place in an exhaustive and well prepared brief filed by his able counsel does appellant point out to us wherein the evidence on the second trial materially and substantially differs from that heard by the court and jury on the first trial. The opinion on the first appeal contains the following, 265 Ky., on page 646, 97 S. W. (2d) on page 568:

"There is no evidence tending to show even an acquaintance of Diehm and Garrison with Peter Schmidt, much less evidence that they had any ill feelings toward him or any motive for setting fire to and burning his property. The feelings of Whitfield, as established by the testimony of Schmidt, tend to show a motive on his part to set fire to and burn Schmidt's property."

On the second trial appellee introduced Garrison and Diehm as witnesses in his behalf. Garrison testified Schmidt was a gambler and operated a resort or two in and around Newport, Kentucky; that he (Garrison) was a racketeer, and to force Schmidt to share with him the profits from such illegal enterprises he called Schmidt by telephone early in January before the fire on February 2nd, and told Schmidt he would burn his place. Schmidt then and there replied to the threat that he was able to take care of himself. Garrison further testified he told Diehm of this threat and to make same good, and to establish himself as a racketeer in the Newport community, he and Diehm on the night of Feb. 2, 1936, went to Schmidt's place (known as Beverly Hills), and burned the house; that Whitfield had no connection with the fire and he and Diehm did not agree, or enter into a conspiracy, with Whitfield to burn this house. Diehm's testimony corroborated Gar-

rison and he likewise exonerated Whitfield from any and all connection with the fire.

The transcript of the evidence introduced on the second trial contains more than 900 pages and the testimony introduced on the first trial was also voluminous. Garrison, Diehm and Whitfield are all ex-convicts, and many of the witnesses testifying for both the Commonwealth and the appellant have criminal records. The evidence introduced in behalf of appellant on his second trial, to show motive on the part of Garrison and Diehm to burn this house, was not sufficient, in our judgment, to warrant the trial court to give a peremptory instruction to the jury to acquit appellant. Such testimony is merely cumulative and does not make such a material and substantial change in the evidence as to prevent the opinion on the first appeal from being the law of the case. Samuels & Co. v. T. M. Gilmore & Co., 142 Ky. 166, 134 S. W. 169. We will not take the space necessary to set out the evidence introduced to connect Whitfield with this crime as that is done in the opinion on the first appeal. As we regard the record, the evidence on the second trial, outside of this cumulative testimony of Garrison and Diehm, is substantially the same as heard on the first trial. And the opinion of this court on the former appeal is the law of the case and is binding not only on the trial court but upon this court as well. Slaughter v. Commonwealth, 152 Ky. 128, 153 S. W. 46; Oldham v. Commonwealth, 228 Ky. 307, 14 S. W. (2d) 1065.

Appellant's contention that the trial court erred in giving the first instruction to the jury cannot be sustained. This instruction submitted to the jury for its determination whether or not Whitfield, alone, or with Garrison and Diehm, or either of them, set fire to the house and burned the child to death. On the first trial this very instruction was given and coupled with it in a second paragraph was the instruction submitting to the jury whether or not Whitfield aided and abetted Garrison and Diehm in committing the crime. On the former appeal we condemned the second paragraph instructing on aiding and abetting but we did not condemn the first paragraph of that first instruction, which first paragraph is identical with the first instruction complained of on this appeal. Therefore, we approved this very instruction on the first appeal and it became the law of the case. See Slaughter v. Commonwealth,

and Oldham v. Commonwealth, supra. However, had this first instruction not become the law of the case and had the court erred in giving it, yet under the proof in the record of defendant's guilt it would not have been prejudicial to his substantial rights, and under section 340 of the Criminal Code of Practice, it would not have been grounds for reversal.

As the third and fourth grounds upon which appellant relies for reversal are closely connected, we will discuss them together. Appellant argues the conspiracy instruction should have submitted to the jury whether or not the murder of the child was necessary in executing the conspiracy to burn the house, or in making an escape after it was burned, and whether or not the death of the child was the necessary or natural consequence of the fire. It is argued that where a killing is not intended and it is not necessary in the execution of the conspiracy and is not a natural consequence thereof, but where an unforeseen death resulted from the doing of an unlawful act, the conspirators are only guilty of manslaughter; therefore, the court should have given a manslaughter instruction in this instance. The weakness of this position lies in the fact that one who conspires to burn a dwelling house in the middle of the night must know there is not only a possibility but a probability of killing someone. Should a person be burned to death as the result of a conspiracy to burn a dwelling house, there can be no doubt such a death is the natural consequence of the burning of the house and the conspirators are guilty of murder even though they did not intend, or calculate, the death of an inmate of the house as a result of the burning.

The indictment did not charge in so many words that this was a dwelling house, but charged the defendants with feloniously setting fire to a house, "in which house at said time was Mary Lou Rardin". Com. v. Woolfolk, 121 Ky. 164, 89 S. W. 110, 28 Ky. Law Rep. 114, and Thomas v. Com., 150 Ky. 374, 150 S. W. 376, 377, define a dwelling house as follows:

" 'A place of residence, habitation.' 'A residence, domicile or mansion.' 'A building for the habitation of man.' 'A house designed to be occupied as a place of abode.' 'A house occupied or intended to be occupied as a residence.' "

See also Mayor of City of Birmingham v. Birmingham

Waterworks Co., 152 Ala.· 306, 44 So. 581, 11 L. R. A., N. S., 613; 2 L .R. A., N. S., 75. Jones v. Com., 239 Ky. 110, 38 S. W. (2d) 971, holds it is unnecessary to aver in an indictment for arson at common law that the house was a dwelling. The word "house" imports a dwelling. Roberson's Criminal Law (2d Ed.) 907, section 701, is to the same effect, as also is State v. Blumenthal, 136 Ark. 532, 203 S. W. 36, L. R. A. 1918E, 482. See annotation. following the Blumenthal case.

It is our conclusion that when the indictment charged defendant with killing this child by setting fire to a house "in which house at said time was Mary Lou Rardin", it charged him with killing her by setting fire to a dwelling house. Defendant knew this house and further knew it was often occupied, or at least part of it, as a house wherein people gambled. The picture of the house filed as an exhibit in the record shows it to be constructed along the lines of a dwelling house.

Roberson's Criminal Laws (2d Ed.) 357, section 482, says:

"It is murder * * * if a person commits arson by setting fire to a dwelling house and accidentally burns the occupant."

Reddick v. Com., 33 S. W. 416, 17 Ky. Law Rep. 1020, holds where a defendant willfully and maliciously sets fire to a dwelling and an inmate is burned to death, the defendant may be convicted of murder, although he may not have intended or calculated the death of an inmate as a result of burning the house. The reason the court gave for holding such an act to be murder is that the death of the inmate was the natural consequence of the fire. The rule is laid down in 29 C. J. section 46, p. 1073, that where there is a conspiracy to commit a felony and a person is killed as a natural consequence thereof, the conspirators are guilty of murder.

There can be no doubt that the death of this child was the natural consequence of burning this house; therefore, it was not necessary for the conspiracy instruction to submit this question for the determination of the jury. Nor did the trial court err in failing to give a manslaughter instruction, since the death of the child was not an unforeseen result of burning the house.

We have not found any errors in the record which in our judgment prejudiced the substantial rights of the defendant; therefore, the judgment is affirmed.