## Keaton v. Commonwealth.

(Decided March 20, 1928.)

### Appeal from Carter Circuit Court.

1. Criminal Law.—Evidence that may be introduced to establish a motive for crime or malice on the part of accused is not alone sufficient evidence that he committed the acts constituting the crime to take the case to jury.

2.  Criminal Law.—Where undisputed testimony showed that blood-
    hounds made no character of demonstration when they encountered
    defendant on trail that led from scene of homicide, evidence as to
    what they did while trailing held of no value.
3.  Homicide.—In prosecution for murder, evidence held insufficient
    to sustain conviction.

CLAY & HOGGE for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellant, William Keaton, has been convicted of
murdering Cecil Hunnecutt and sentenced to the peni-
tentiary for life. He prosecutes this appeal from that
judgment.

The first question presented by the appeal is
whether the evidence was sufficient to take the case to the
jury. Cecil Hunnecutt was killed late in the afternoon
of November 16, 1926. He was assassinated. His mur-
derer hid among the bushes and undergrowth on a hill-
side near his home and killed him while he was chopping
wood in his woodyard. Four or five shots were fired,
only one of which struck deceased. The bullet lodged in
his body, was recovered, and disclosed the murderer to
have used a .38 caliber pistol as the agency of death. It
was a steel or copper jacketed bullet. Deceased's wife,
who was sitting within their home, heard the fusillade of
shots, but was not particularly alarmed, because she
thought bird hunters had flushed a covey of quail and
were shooting at them. However, she walked to the front
door, and, as she reached it, her husband staggered into
the porch and said, "I am killed." He spoke no other
words, and sank immediately to the floor, and soon died.
Mrs. Hunnecutt did not see any one, and did not testify
to any fact tending in the least to establish that appellant
or either of his codefendants did the shooting that re-
sulted in her husband's death.

About 24 hours after the homicide occurred, B. H.
Caldwell, of Huntington, W. Va., reached the scene of
the tragedy and brought with him two bloodhounds.
Without reference to the testimony heard as to the pedi-
gree and training of these dogs, the testimony of
a number of witnesses was heard as to how they were put
on the trail at a track not far from a stump behind which

there was evidence that the assassin had lain in wait for his victim. They described the trailing of the dogs through the hills, and at several different places they found tracks corresponding to the one they found near the scene of the murder. The trail of the dogs eventually took them to a highway, which they followed for some three or four hundred yards. They then went onto the premises of appellant, William Keaton, going first to the barn and then to his residence. Dewey Thomas, jointly indicted with appellant, was then living at his home, and the witnesses all testified that when the dogs met Thomas they made some kind of demonstration. Caldwell, the owner of the dogs, stated "they stopped and looked him over." Later in his testimony he stated "they stopped and looked at him, smelled of him, and came back up to the house." One witness testified that the dogs "sat down and looked at Thomas." All of the witnesses agree that the dogs made no demonstration whatever, when they met appellant, William Keaton, who was at his barn when they came.

It was shown that about sixteen years before this tragedy appellant, William Keaton, and deceased, Cecil Hunnecutt, had a difficulty. It was shown that approximately eight months before his death Cecil Hunnecutt had a pair of mules poisoned, and accused appellant, William Keaton, and his son, his codefendant Hubert Keaton, of this offense. It was shown that Hubert Keaton had accused deceased of reporting his violations of the prohibition laws. There was some testimony tending to establish vague, indefinite, and general threats made by appellant and his codefendant Hubert Keaton; and one witness testified that about fifteen years before the killing appellant said to him, "I will whip Cecil Hunnecutt if I have to drag him under the bed." The nearest approach to a direct threat is contained in the testimony of a witness who in August before the homicide in November had a conversation with appellant. The witness testified:

> "He was talking how they were accusing Hubert Keaton of making whisky and accusing him of killing George Johnson's horse and accusing him of cutting wire fence, and the way I understood it he said they would be killed. He said, 'I don't know that I will do it, but it will be done.' He talked on the same subject, and brought in Hunnecutt's name;

'that is what he said concerning the case as near as I know.''

Appellant, William Keaton, was shown by uncontradicted testimony to have been at a storehouse 15 miles away at the time when deceased was killed. Appellant's codefendant Hubert Keaton is shown by the uncontradicted testimony to have been in Toledo, Ohio, the day that this tragedy occurred, and to have lived in that city continuously some four or five months before and some four or five months thereafter. Dewey Thomas is about 19 years of age. His mother and father are dead; he is distantly related to appellant's wife; and for some five or six months prior to the tragedy had lived in appellant's home and carried the mail for him on a short route between Stephens and Charity, post offices in his home county. This route is about 4 miles long, and the carrier leaves Stephens at one o'clock p. m. and is due back at 3 or shortly thereafter. He is shown to have carried the mail the day of the tragedy.

A .32-20 caliber pistol and a .38 caliber pistol were found at the home of appellant. There was no testimony that they bore evidence of having been fired recently, and the .38 caliber pistol was partially loaded with ordinary cartridges with leaden balls.

The indictment charged the three defendants jointly with having killed deceased, and that each of them was present and aided and abetted the other so to do. It also charged that they conspired together to kill him, and that some one or more of them killed him pursuant to and in furtherance of the conspiracy.

The record affords not the slightest evidence to the effect that the defendants conspired to kill Cecil Hunnecutt. Defendant Hubert Keaton was shown to have been absent from Kentucky and to have lived in Toledo, Ohio, for several months before the homicide. The mere fact that Dewey Thomas lived in the home with appellant, William Keaton, does not afford any evidence that they conspired to kill Cecil Hunnecutt. There is not the slightest evidence that appellant, William Keaton, was present when deceased was killed. On the other hand, it establishes beyond contradiction that he was some 15 miles away. As was written by this court in Evans v. Commonwealth, 221 Ky. 648, 299 S. W. 553, evidence that may be introduced to establish a motive for the crime or

malice upon the part of accused is not alone sufficient evidence that he committed the acts constituting the crime to take the case to the jury. That question was fully discussed in the Evans opinion, and what was said there need not be repeated here. Assuming without deciding that the evidence offered as to the pedigree and training of the bloodhounds was sufficient to authorize the witnesses to testify as to what they did while trailing, within the rule laid down in Meyers v. Commonwealth, 194 Ky. 523, 240 S. W. 71, that evidence all came to naught so far as appellant is concerned, because the undisputed testimony is that the dogs made no character of demonstration when they encountered him on the trail and they ran from the scene of the tragedy. As this court views the record, there is a total lack of evidence tending to establish the guilt of appellant, and the trial court erred in not directing the jury to acquit the defendant at the conclusion of the testimony. We are wholly at a loss to account for the verdict of guilty and the punishment fixed by the jury in this case where the testimony is not sufficient to create a real suspicion, much less afford evidence of the guilt of appellant.

The judgment is reversed, and cause remanded for a new trial consistent herewith.