## Holman v. Commonwealth.

Oct. 16, 1942.

Alfred C. Ross for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Bruce Holman and Otice Merle Ament were jointly indicted for the murder of Holman's divorced wife. Holman was convicted of voluntary manslaughter and sentenced to twenty-one years' imprisonment. The disposition of the charge against Ament is not disclosed.

The principal ground for a reversal urged by the appellant is that he was entitled to a directed verdict of acquittal; and a summary of the evidence will show that his contention is well founded.

At the time of the killing, Holman was residing with his divorced wife, the mother of his six children, the youngest of whom were twins approximately a year old. The residence was situated near a railroad depot and yard in Central City, and appears to have been the resort of "hoboes" and other men, among them, one or more of Mrs. Holman's "sweethearts." One of the sleeping rooms was occupied by Mrs. Holman, the children, and an eleven year old girl who was employed in the capacity of nurse for the twins. The other sleeping room, across the hall, was occupied by Holman during his frequent visits.

About five o'clock on the morning of August 7, 1941, the nurse was awakened by appellant with the statement that "somebody had come in and killed his

wife.'' Appellant was crying, and Ament was sitting at the foot of the bed. An examination disclosed that Mrs. Holman's skull behind her left ear had been crushed, apparently while she was lying on her right side asleep, and that the brain had been penetrated by a sharp instrument about the size of an ice pick. The bed, and floor underneath and around it, were drenched with blood, but there was no evidence of a struggle. None of the children had been awakened during the night, and the twins were in Mrs. Holman's bed, one on either side of her.

The testimony indicated that Holman had left the house that night between eleven and twelve o'clock before Mrs. Holman and the nurse had retired. Ament, it seems, was to spend the night on the front porch which adjoined the room occupied by Mrs. Holman; and it is apparently the theory of the appellant that Ament struck the fatal blow, possibly through an opening in the window. Be this as it may, the only evidence introduced by the Commonwealth remotely tending to incriminate appellant consisted of two alleged threats made by him during the preceding afternoon, and the testimony of several witnesses who saw appellant and Ament about town during the night attempting to sell articles of clothing. They had drunk a quart of whiskey during the day, and, according to appellant's admissions, he was trying to sell a dress belonging to ''his wife'' in order to obtain money with which to purchase more whiskey. Eventually he succeeded in selling the dress for 25c and an undershirt. The time of the killing was definitely fixed for the Commonwealth at 2:30 o'clock A. M. by the testimony of a neighbor who claims to have heard Mrs. Holman moan, and cry ''Lord have mercy'' at that exact time. The testimony of appellant's witnesses showing the places which he visited during the night is somewhat persuasive that he could not have been at his home at the hour named by the Commonwealth's witness. However, the question to be decided is not the strength of appellant's alibi, but the sufficiency of the Commonwealth's testimony to show that he committed or participated in the crime.

Appellant was a veteran of the first World War and the recipient of a pension of $100 per month for permanent total disability, the nature of which is not shown. From the testimony it is obvious that he was a drunkard

and had descended to the very depths of depravity. It had been his custom to roam the streets at night, visiting "hobo" camps, and associating with questionable characters. $65 of his monthly allowance was being paid to Mrs. Holman, and one of the threats which he is alleged to have made during the afternoon preceding the murder was, "she would never get another $65.00 of his money." This was testified to by the eleven-year old nurse. The other threat alleged to have been made during the afternoon, while Mrs. Holman was hanging clothes in the yard, was, "If you don't have intercourse with me I will kill you," to which she replied, "That is what you think." But, as said in Evans v. Commonwealth, 221 Ky. 648, 299 S. W. 553, 555, "Previous threats, made by one charged with murder, against deceased are never admitted as substantive evidence that he committed the acts constituting the crime." They are competent to show motive and the accused's state of mind, but, of themselves, are insufficient to establish guilt. Keaton v. Commonwealth, 223 Ky. 645, 4 S. W. (2d) 675.

Appellant made no admissions or incriminating statements; and no blood stains appeared on his clothing. The instrument with which the fatal wound was inflicted was never found, unless it was the small axe which appellant claimed he had used that morning, shortly after returning home and before he had discovered the murder, to chop kindling for the kitchen stove on which the babies' milk was customarily heated. But no effort had been made to conceal the axe, no blood stains were found on it, although it was sent to the city chemist, and there is no satisfactory evidence that it could have made the small hole through which the blood flowed so copiously. It is true that the police found no evidence that a fire had been started in the stove that morning, but this is only another suspicious circumstance lacking the quality of substantive proof of guilt. No one saw appellant near the house during any portion of the period intervening between his departure prior to the killing and his appearance in Mrs. Holman's bedroom about five o'clock the following morning. The undertaker who examined the body about 6:30 A. M. expressed the opinion that she had been dead from three to four hours, which would seem to confirm the testimony of the Commonwealth's witness who claims to have heard the moan and outcry at 2:30 A. M. Ament apparently disappeared from the scene shortly after appellant had

awakened the nurse, and was taken off of a train at Beaver Dam. He, or appellant, or some stranger to the record may have committed the murder. According to the nurse, Mrs. Holman's "sweetheart" had met Mrs. Holman on the road that night near her home, after she had sent him word, by the nurse, that she was "afraid." The physical location of the house, as well as the moral obliquity of its occupants, apparently made it attractive to a class whose visitations might well have been accompanied with violence. The only thing we can say with certainty respecting the actual murderer is that the record contains no proof, as distinguished from suspicion, that he is the appellant. In this state of case, the Trial Court should have sustained appellant's motion for a directed verdict of acquittal.

If there should be another trial at which sufficient evidence of appellant's guilt is produced to warrant a submission of the issue to the jury, the Court should omit the instruction on "Voluntary Manslaughter," unless the appellant appears to be entitled to it under the principles enunciated by this Court in the case of Benson v. Commonwealth, 290 Ky. 713, 162 S. W. (2d) 538.

Judgment reversed.