Geneva ROSE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 18, 1964.

Thomas D. Shumate, Shumate, Shumate & Flaherty, Richmond, for appellant.

Robert F. Matthews, Atty. Gen., Frank D. Berry, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Geneva Rose was convicted of aiding and abetting her son and co-defendant, Lawrence Rose, in the slaying of John Rose, husband of Geneva and father of Lawrence. Geneva and Lawrence each received sentences imposing imprisonment for ten years. KRS 435.020. The present appeal is prosecuted by Geneva; Lawrence Rose has not appealed.

Several grounds for reversal are presented, but our view of the case requires consideration of only one: Did the trial court err in failing to direct a verdict of acquittal? We hold that it did.

On April 3, 1964, Lawrence Rose shot and killed his father, John Rose. The homicide was committed just outside Geneva's bedroom in the Rose residence. At the time of the shooting, which occurred about 9:30 p. m., Geneva was in bed with the two youngest of the five children of whom she and John were the parents. The two children in bed with their mother, Geneva, were four and five years of age, both girls. Lawrence was fifteen at the time of the incident.

Two weeks prior to the shooting John Rose had returned from his place of employment in Dayton, Ohio, to spend the week end at home. When John arrived at home he was very drunk and enraged; he "kicked the storm door out and knocked the lock off the door," according to Geneva's testimony. He then demanded Geneva's car keys, which she handed to him. Thereupon, John drove Geneva's car "up in the road and took his knife and sliced the seats up and poured a gallon of gas in them and struck a match to it and he went in the house and throwed twelve pop bottles in the television and broke up everything in

the kitchen." The car was destroyed. On the same occasion, John jerked the telephone out, according to Geneva. It was during this rampage that John told Geneva that if Lawrence (the son) should walk through the yard, "I will blow his damned head off." Lawrence was visiting at Walton when all this occurred. On that same night, John refused to permit an ambulance operator to remove one of the children to the hospital for needed medical attention.

Geneva said that she told Lawrence of John's threat against him, but only in response to an inquiry Lawrence made of her. The prosecution offered evidence by one witness who asserted that Geneva had told the witness, about 6:00 p. m. on the day of the killing, that if John came back on the place, she would kill him, and that she did not want him "around no more." Geneva denied this threat; there was evidence attacking the veracity of the witness who told of the threat.

For the prosecution it was shown that on the night of the tragedy, John had brought home a new television and a supply of groceries. Some evidence for the prosecution suggests that Geneva had been indiscreet in her associations with A. J. Pennington, who lived next door in another residence also owned by John and Geneva Rose. In fact, the indictment included Pennington as an accused principal in the present homicide, but the trial court directed a verdict of acquittal as to him. The prosecution's theory is that Geneva and Pennington desired to be rid of John, and that they had deliberately planted a seed of vengeance in Lawrence's heart by Geneva's communication to him of John's purported threat. The difficulty is that there is not any substantial evidence to support the theory.

Lawrence testified that he saw his father come into the home on the night of the shooting; that his father appeared to him to be intoxicated. He said that he heard his father berating his mother, and that he was afraid for the safety of the family. It was this, he said, which prompted his going to

the bedroom armed with the single shot Stevens shotgun. Lawrence said that he leaned the gun against the door and asked his father whether he (the father) was "going to shoot my brains out." Thereupon, John mumbled something and "made a dive for me and the gun," Lawrence said. John and Lawrence then scuffled for possession of the gun, in the course of which scuffle, they went into the "front room" and then "half way back into the room" (presumably the bedroom). During all of this encounter, Geneva was in bed with the two small girls. The alleged paramour, Pennington, was not present in the house.

Lawrence and Geneva specifically denied that Geneva had any part in the encounter and the consequent shooting. Apart from the circumstances just related there is no evidence implicating Geneva in the parricide.

 We adhere to the rule that one's mere presence at the scene of a crime is not evidence that such one committed it or aided in its commission. Ray v. Commonwealth, Ky., 284 S.W.2d 76; Moore v. Commonwealth, Ky., 282 S.W.2d 613; Fairchild v. Commonwealth, 312 Ky. 741, 229 S.W.2d 754; 6 Ky.Digest 1, Criminal Law,

It is likewise true that the evidence of the threat supposedly made by Geneva, while admissible, is not substantive evidence that she committed the crime, nor that she aided in it. Holman v. Commonwealth, 291 Ky. 622, 165 S.W.2d 167; Evans v. Commonwealth, 221 Ky. 648, 299 S.W. 553. The evidence of a previous threat is admissible for the purpose of establishing malice, or intent to kill, but it cannot support a conviction of itself alone. Cf. Keaton v. Commonwealth, 223 Ky. 645, 4 S.W.2d 675.

A conviction may be had upon circumstantial evidence, but the circumstances shown must be so unequivocal and incriminating in character as to exclude every reasonable hypothesis of the innocence of the accused. Brown v. Commonwealth, Ky., 340 S.W.2d 471; Baird v. Commonwealth, 241 Ky. 795, 45 S.W.2d 466. The evidence upon the trial here was not of the quality to meet the foregoing test, and does not support a conviction. If, upon a new trial, the evidence is substantially the same, the court will direct a verdict of acquittal.

The other errors asserted by appellant likely will not recur on another trial, and decision as to them is reserved.

The judgment is reversed with directions to grant the appellant a new trial and for proceedings consistent with the opinion.