## Williams v. Commonwealth.

(Decided May 29, 1934.)

FLOYD TAYLOR and W. L. HAMMOND for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The appellant, Tom Williams, has been convicted of the crime of manslaughter, and from a judgment sentencing him to imprisonment for twenty-one years he appeals. The chief ground urged for a reversal of the

judgment is that the evidence was not sufficient to sustain the verdict.

Williams was a member of a local political club, or secret society, known as the Good Fellowship Order. Shortly after dark on September 30, 1933, accompanied by two members of the order, Chester Chadwell and James Rosenbaum, appellant went to a point near the city limits of Middlesboro and near the home of the deceased, W. M. Capps, to burn a cross. On the way to the place selected for the cross burning, appellant exhibited to his companions a 38-caliber pistol. They arrived at the designated spot, which was on land owned by the deceased, and proceeded to set up the cross. While they were thus engaged but before they had set fire to the cross, they heard some one approaching, and Rosenbaum, who at the time was 25 or 30 feet from appellant and Chadwell, heard some one say: "Halt, damn you, or I'll shoot." Two shots were fired, and appellant and his companions ran through the fields to their homes. Capps was found lying about 50 feet from the spot where appellant had been engaged in erecting the cross. He had been struck by a bullet fired from a 38-caliber pistol and died a few hours after he was taken to the hospital.

Rosenbaum testified that the two shots were fired in rapid succession and that it was his opinion that Capps fired the first shot and that the second shot came from the direction in which Williams and Chadwell were running. He heard either Williams or Chadwell say: "I shot to save your life." On the following morning Williams came to his home and told him that he had shot Capps and to "keep his mouth shut."

Mrs. W. M. Capps testified that her husband heard a noise in the field near the house and went over to investigate. Soon after he left she heard the first shot fired and heard her husband say: "Lord have mercy, I am shot and killed." After he said this a second shot was fired.

James Crutchfield testified that a few days after the killing appellant told him that he shot the deceased and at the same time showed him a 38-caliber pistol in which one of the chambers was empty. Appellant said "he was aiming to mark that chamber but he hadn't, he always marked one when he shot anybody, and said that

was the chamber the cartridge came out of that shot Bill Capps."

Appellant and deceased were brothers-in-law. There was evidence that several months prior to the killing the appellant had a fight with the deceased and his wife at the Capps home and after the killing he said to Jodie West, "I got my revenge."

Appellant denied that he shot the deceased and testified that he saw an automobile with a Tennessee license parked on the road a few feet from the point where he and his companions were located when Capps was shot. He saw two men and a woman near the automobile, and one of the men went behind a barn near the Capps home, and it is his theory that one of these men shot Capps. Appellant puts great reliance on a statement made by Capps just before he died that Will Smith shot him and that Roy York and another man were present. The statement was made to M. E. Brown, a justice of the peace, and, according to Brown, Capps stated that he thought or believed that it was Bill Smith who shot him. It is clear from his statement that he was not positive in his identification of his assailant.

From the foregoing summary of the evidence it will readily be seen that appellant's contention that the evidence was not sufficient to sustain the verdict is without substance. There was abundant evidence, in addition to his own admissions, tending to show that appellant fired the fatal shot and that the shooting was not done in his necessary self-defense.

Appellant complains because the court permitted the attorney for the commonwealth to question each juror on his voir dire examination as to his membership in the Good Fellowship Order. The trial court has a broad discretion in the matter of ascertaining the fitness of jurors, and both the attorney for the commonwealth and the attorney for the defendant should be permitted to ask prospective jurors pertinent questions calculated to elicit information in regard to bias, interest, or relationship. The record fails to disclose what questions were asked or to what extent the inquiry was pressed or that any objection was made, and in the absence of such a showing we are precluded from considering the error even if it be conceded that one was committed. McGeorge v. Commonwealth, 234 Ky. 189, 27 S. W. (2d) 967.

It is argued in appellant's brief that incompetent evidence was admitted, but the only evidence pointed out to which objection was made at the time pertained to membership in the Good Fellowship Order. The witnesses Rosenbaum and Chadwell were asked if they were members of the order, and each answered, "Yes." The inquiry was not pressed further. The question was proper, since it was for the purpose of ascertaining the association of the witnesses with appellant and disclosing any personal bias.

It is finally contended that the commonwealth's attorney made improper remarks to the jury in his closing argument. It is impossible to determine from the bill of exceptions the exact phraseology used by the attorney for the commonwealth, but the bill of exceptions does disclose that his remarks were made in response to a statement that had been made by the attorney for the appellant in his argument. In any event, the remarks were not prejudicial.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.