## SIZEMORE v. COMMONWEALTH.

Court of Appeals of Kentucky.

Oct. 16, 1953.

As Modified on Denial of Rehearing

Dec. 18, 1953.

S. M. Ward, Don A. Ward, Hazard, for appellant.

Hon. J. D. Buckman, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Tommie Sizemore and John Stevens were jointly indicted on February 12, 1953, by the Clay County grand jury, each charged with the crime of willfully exploding dynamite or other explosive substance within and under a dwelling house in violation of KRS 433.460. A severance having been granted, the Commonwealth elected to try Sizemore who was convicted and sentenced to the penitentiary for two years.

This appeal urges two grounds for reversal of the judgment entered: First, that the indictment on which the conviction is based is void because the Clay County grand jury was not legally in session when it was returned; and second, that the trial court did not submit to the jury the whole law of the case. We shall consider these grounds in the order stated.

Five days after the indictment first above mentioned was returned, or on February 17th, designated the eighth day of the February term in the caption of the order book, an order was entered by the Clay Circuit Court, which stated that the grand jury would not be able to complete their work on that day and directed an adjournment of the session until the following Tuesday, February 24th, at which time they were to reconvene for an extended period of three days. The grand jury did not actually reconvene, however, until February 26th, or nine days later. An order entered on this date recited that no court had been in session since February 12th, due to the illness of the circuit judge, and that the above indictment would be passed until Monday, March 2nd, at which time Sizemore and Stevens would be arraigned.

On March 2nd Sizemore and Stevens were brought before the court for arraignment. A demurrer to the indictment and a motion to quash were entered and each was sustained. The case was then, and we quote, "referred to the present grand jury which is now in session." On the same day, the grand jury returned a second indictment, accusing the two men in sim-

ilar language with the same offense. Appellant was again brought before the court for arraignment, whereupon he moved that the court release him from custody on the ground that the second indictment was void, and he further requested a continuance. Both motions were overruled and the case was set for trial on March 5, 1953. On the date just mentioned, Sizemore moved for a change of venue. This motion the court sustained, transferring the case to the Jackson Circuit Court and assigning it for trial in that court on March 12th. On the day set, the trial was had with the result we have heretofore mentioned.

KRS 29.240 provides, in part, that a grand jury shall not remain in session longer than six days at any regular term of court, but that, if the business before the grand jury requires it, the court may extend the session for a period of not more than three days longer. In extending a grand jury session, the court must set forth the reason in an order recorded in the proper book. In applying this statutory provision to the facts we have outlined appellant advances a twofold contention. In the first place, he maintains that the order of February 17th, extending the session for a three-day period, was entered, as it indicates on its face, on the eighth day of the term, with the result, he claims, that the order was void because it was made two days after the expiration of the regular six-day session. But, conceding the order extending the session may in fact be valid, he then insists that the grand jury could not have been legally in session on March 2nd when appellant was reindicted, for the reason, he argues, that the extra three days of the extended session, which was set to begin and did begin on February 24th, had elapsed before the second indictment was returned, and, as a consequence, the indictment returned against him is void because it was entered after the session had terminated.

■ Appellant's argument presupposes that a grand jury, in session during a regular term or an extension thereof, must sit on consecutive days with the result that those days during which such a jury might be duly and regularly adjourned must nevertheless be counted as a part of the session. Suffice it to say, this contention is not and cannot be supported legally or logically, and we reject it without further discussion.

■ Moreover, the record before us furnishes no information as to whether the order of February 17th was entered after the six-day grand jury session had lawfully terminated or whether the second indictment was returned after the three-day extension thereof had expired. Under the circumstances we must assume the adjournments were sufficient in number during the regular and extended sessions to enable the court and the grand jury to transact their duties within the time limits prescribed by law, and, furthermore, we must indulge the presumption that the official act of the grand jury in connection with the indictment of appellant during the extended session, or on March 2nd, was performed in a valid manner, since, as is the case here, there is an absence of any showing to the contrary. 43 Am. Jur., Public Officers, Sec. 511, p. 254.

It is next asserted the trial court committed an error prejudicial to appellant's substantial rights when it failed to instruct the jury as to the weight to be given to the testimony of John Stevens, appellant's accomplice, who appeared at the trial as a witness for the Commonwealth. This complaint requires a review of the evidence.

Stevens testified that on the occasion of the explosion he was spending the night at the residence of Lester Collins and that, about 8:30 p. m., appellant came to the Collins' dwelling, located nearby Sizemore's home, and remarked: "I could blow up my house and get some money to get the house repaired." Collins, a cousin of Sizemore, owned the house in which Sizemore and his family lived; nevertheless, according to Stevens, Collins told Sizemore to carry out his plot, that he didn't care about the house anyway. Stevens was then asked by ap-

pellant to accompany him, which he did. The two men proceeded to Sizemore's home where appellant and his wife prepared the dynamite. Leaving Stevens behind, appellant took his wife and children back to Collins' home, and they are purported to have remained there over night. Sizemore presently returned to Stevens and told the latter to get about 200 yards away in order to be in a safe place. Stevens obeyed this instruction, and he was soon joined by appellant. The two men remained in this position until the explosion occurred some two minutes later. Stevens said he, appellant, Lester Collins and Collins' wife, Idell, went to Hazard a short time thereafter. There they talked to one Tom Raney, an official of the United Mine Workers Union, with which union they were affiliated, and told him Collins' house had been blown up because Sizemore and Collins had been active in the union's behalf. The record does not disclose it, but it seems that the union was reimbursing persons who sustained bona fide property losses growing out of their union operations in Clay County. As a result of this visit, Collins received $200 from Raney to repair the damage to his house.

It was brought out by the testimony of Edward L. Cornett and James E. Combs, detectives for the Kentucky State Police and witnesses for the Commonwealth, who visited the scene of the explosion, that the house had been dynamited. Collins and his wife, Idell, testifying for the Commonwealth, corroborated Stevens' testimony practically in its entirety.

Appellant and his wife, who testified in his behalf, denied the foregoing evidence presented by the Commonwealth. Their version as to how the explosion occurred was that a stranger had been seen lurking in the vicinity of their home on the evening of December 5, 1952, shortly after they and their children had gone to bed. Sizemore, hearing his dogs bark later in the night, said he arose to investigate but, seeing no one, returned to bed. The explosion occurred soon thereafter, it was claimed. They denied they had visited Collins' home at any time that night or that they made the trip to Hazard. They stated that Collins, his wife and Stevens came to their home for the first time immediately after the explosion.

■ Turning now to appellant's second assignment of error, we take cognizance of the fact that Section 241 of the Criminal Code of Practice lays down this principle: "A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; * * *." In giving effect to this section of the Code, the general rule is that where there is a conflict in the evidence as to whether the witness was an accomplice, the trial court should instruct the jury if they believe the witness was an accomplice in the commission of the offense, they should acquit the accused, unless there is other corroborative evidence tending to connect the accused with the criminal act. See Stanley's Instructions to Juries, Section 946, page 1258, and the many cases cited in the footnote to this section.

■ We have held, nevertheless, that it is not reversible error to fail to instruct in accordance with above-quoted Code provision where the testimony of the accomplice has been overwhelmingly corroborated or the accused's guilt has been established by independent, ample, substantial evidence of a competent nature. Hendrickson v. Commonwealth, 235 Ky. 5, 29 S.W.2d 646; Fox v. Commonwealth, 248 Ky. 466, 58 S.W.2d 608.

■ We need only point out for the sake of emphasis, because we have heretofore alluded to the fact, that the evidence of Lester Collins and his wife, Idell, substantiates in detail the proof given by Stevens, the accomplice. In fact, the testimony of Stevens could be entirely eliminated from the case and there would still be an abundance of testimony to sustain the verdict. Neither Collins nor his wife was an accomplice. See Levering v. Commonwealth, 132 Ky. 666, 117 S.W. 253. We are therefore

of the opinion that the test laid down in the Hendrickson and the Fox cases has been adequately met, and it follows that the failure of the court to give the accomplice instruction does not constitute a reversible error.

Wherefore, the judgment is affirmed.